UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------x

ALISA MORRISON,

                              Plaintiff,

            -against-

MICHAEL BLOOMBERG, in his capacity as the
Mayor of the City of New York,

                              Defendant.

------------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E D N Y
★ OCT 14 2009 ★
BROOKLYN OFFICE

09  4396

COMPLAINT

GLASSER, J.
CARTER, M.J.

## PRELIMINARY STATEMENT

1.      Plaintiff seeks a judgment declaring that the City unconstitutionally applied its Nuisance Abatement Law, N.Y.C. Admin. Code 7-701 et seq., to lock her out of her apartment pursuant to a grossly inappropriate and unnecessary ex parte court order.  Plaintiff further seeks damages to compensate her for the deprivation of her constitutional rights.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and the Administrative Procedure Act, 5 U.S.C. § 701 et seq.  The Court has jurisdiction over plaintiffs' State law claims pursuant to 28 U.S.C. § 1367.

3.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. Sec. 1391(e) because the property is located in this district.

## PARTIES

4.      Plaintiff ALISA MORRISON resides at apartment 2-C, 40-16 12th Street, Long Island City, New York.

5.      Defendant MICHAEL BLOOMBERG is the Mayor of the City of New York, as such is responsible for the administration and enforcement of the City's Public Nuisance Law. He is being sued in his official capacity.  The office of his Corporation Counsel is located at 100 Church Street, New York, New York 10007.

## STATUTORY AND REGULATORY SCHEME

The NYC Nuisance Abatement Law

6.      The Nuisance Abatement Law, N.Y.C. Admin. Code § 7-701 et seq., (hereinafter "the Statute") was enacted by the N.Y. City Council based on its finding that

> that public nuisances exist in the city of New York in the operation of certain commercial establishments and the use or alteration of property in flagrant violation of the building code, zoning resolution, health laws, multiple dwelling law, penal laws regulating obscenity, prostitution and related conduct, licensing laws, environmental laws, laws relating to the sale and consumption of alcoholic beverages, laws relating to gambling, controlled substances and dangerous drugs and penal laws relating to the possession of stolen property, all of which interfere with the interest of the public in the quality of life and total community environment, the tone of commerce in the city, property values and the public health, safety, and welfare

7.      The Statute includes in its definition of "public nuisance" buildings in which,

> within the period of one year prior to the commencement of an action under this chapter, there have occurred three or more violations of one or any combination of the provisions of article two hundred twenty, two hundred twenty-one or two hundred twenty-five of the penal law; [i.e. offenses involving controlled substances].

2

N.Y.C. Admin. Code § 7-703(g).

8.      The Statute Law authorizes the City to apply for a preliminary and permanent injunction enjoining the existence of a nuisance:

> Pending an action for a permanent injunction as provided for in section 7-706 of this subchapter, the court may grant a preliminary injunction enjoining a public nuisance within the scope of this subchapter and the person or persons conducting, maintaining or permitting the public nuisance from further conducting, maintaining or permitting the public nuisance. An order granting a preliminary injunction shall direct a trial of the issues within three business days after joinder of issue or, if issue has already been joined, within three business days after the entry of the order. Where a preliminary injunction has been granted, the court shall render a decision with respect to a permanent injunction within three business days after the conclusion of the trial.

N.Y.C. Admin. Code § 7-707.

9.      The Statute further provides that

> a temporary closing order may be granted pending a hearing for a preliminary injunction where it appears by clear and convincing evidence that a public nuisance within the scope of this subchapter is being conducted, maintained or permitted and that the public health, safety or welfare immediately requires the granting of a temporary closing order. A temporary restraining order may be granted pending a hearing for a preliminary injunction where it appears by clear and convincing evidence that a public nuisance within the scope of this subchapter is being conducted, maintained or permitted.

N.Y.C. Admin. Code § 7-707(a)

10.     In addition, Section 7-709 of the Statute authorizes the City to apply for "a temporary closing order" sealing the subject premises without prior notice:

> If, on a motion for a preliminary injunction pursuant to section 7-707 of this subchapter, the corporation counsel shall show by clear and convincing evidence that a public nuisance within the scope of this subchapter is being conducted, maintained or permitted <u>and that the public health, safety or welfare immediately requires</u> a temporary closing order, a temporary order closing such part of the

3

building, erection or place wherein the public nuisance is being conducted, maintained or permitted may be granted without notice, pending order of the court granting or refusing the preliminary injunction and until further order of the court. Upon granting a temporary closing order, the court shall direct the holding of a hearing for the preliminary injunction at the earliest possible time but in no event later than three business days from the granting of such order; a decision on the motion for a preliminary injunction shall be rendered by the court within three business days after the conclusion of the hearing. [emphasis added]

11.    Section 7-711(a) of the Statute states that

If on a motion for a preliminary injunction, the corporation counsel submits evidence warranting both a temporary closing order and a temporary restraining order, the court shall grant both orders. [emphasis added]

12.    Section 7-711 further states that

The officers serving a temporary closing order shall, upon service of the order, command all persons present in the building, erection or place to vacate the premises forthwith. Upon the building, erection or place being vacated, the premises shall be securely locked and all keys delivered to the officers serving the order who thereafter shall deliver the keys to the fee owner, lessor or lessee of the building, erection or place involved. If the fee owner, lessor or lessee is not at the building, erection or place when the order is being executed, the officers shall securely padlock the premises and retain the keys until the fee owner, lessor or lessee of the building is ascertained, in which event, the officers shall deliver the keys to such owner, lessor or lessee.

13.    Upon service of the temporary closing order

the officer shall post a copy thereof in a conspicuous place or upon one or more of the principal doors at entrances of such premises where the public nuisance is being conducted, maintained or permitted. In addition, where a temporary closing order has been granted, the officers shall affix, in a conspicuous place or upon one or more of the principal doors at entrances of such premises, a printed notice that the premises have been closed by court order, which notice shall contain the legend "closed by court order" in block lettering of sufficient size to be observed by anyone intending or likely to enter the premises, the date of the order, the court from which issued and the name of the office or agency posting the notice ... Mutilation or removal of such a posted order or such a posted notice while it remains in force, in addition to any other punishment prescribed by law, shall be

punishable, on conviction, by a fine of not more than five hundred dollars or by imprisonment not exceeding ninety days, or by both, provided such order or notice contains therein a notice of such penalty. The police department shall, upon the request of the agency involved or upon the direction of the mayor, assist in the enforcement of this subdivision.

N.Y.C. Admin. Code § 7-711(e).

14.     "A temporary closing order or a temporary restraining order shall be vacated, upon notice to the corporation counsel, if the defendant shows by affidavit and such other proof as may be submitted that the public nuisance within the scope of this subchapter has been abated." N.Y.C. Admin. Code § 7-711(e).

## NYC Housing Authority Eviction Procedures

15.     NYCHA's Termination of Tenancy Procedures, adopted pursuant to the consent decree in Escalera v. New York City Housing Authority, 67 Civ. 4307 (S.D.N.Y. 1971), provides that public housing tenants will be afforded an administrative hearing prior to the termination of their tenancy.

16.     The Procedures provide that the tenant will be sent a Notice of Charges prior to a hearing before an impartial Hearing Officer.  Procedures, pars. 4, 5.

17.     At the hearing, the tenant is given the opportunity to present written and oral evidence, to subpoena documents, and to cross-examine witnesses for the Housing Authority. Procedures, par. 6.

18.     The Hearing Officer must prepare a written decision setting forth her

determination with respect to each of the charges, based solely upon the evidence at the hearing.

Procedures, par. 9.

19.     Paragraph 10 of the termination procedures states that in the event that the

Hearing Officer sustains any charge, he may make any of the following dispositions:

> Termination of Tenancy;
> Probation;
> Eligible subject to permanent exclusion of one or more persons in the household;
> Eligible;
> Eligible with referral to social services.

20.     Paragraph 6(d) of the Termination of Tenancy Procedures states that where

charges of non-desirable acts are brought against the tenant based on

> behavior of a person (the "Offender") other than the tenant, it is the Housing
> Authority's responsibility to prove that the offender occupied the premises at the
> time of the offense.  However, even if the Housing Authority proves this, the
> tenant may still show that the offender has permanently moved out by the time of
> the hearing.

> The tenant may be able to avoid the penalty of losing his or her apartment if:

>> (I) at the hearing on the charge(s), the tenant claims the offender
>> has left the tenant's apartment permanently,  and

>> (ii) the tenant presents evidence to the Hearing Officer to support
>> this claim.

21.     Paragraph 13 of the Procedures further requires that

> Where the offender or offenders has (have) been removed from the household, it
> is mandatory that the disposition be: "eligible"; "probation"; or "eligible subject to
> permanent exclusion of one or more persons in the household"

6

Where the offenders have been removed, NYCHA's Procedures do not permit termination of the tenancy.

22.   Paragraph 14 of the Procedures states that

where any substantial charge of non-desirability has been proven, a tenant may be given probation ... when the conditions set forth in subparagraph (a) exist, and must be given probation ... when the conditions in subparagraph (b) exist:

(a) There is reason to believe that the conduct or condition which led to the charge of non-desirability may not recur or may have been cured, or that the tenant is taking or is prepared to take steps to correct or cure such conduct or condition.

(b) Absence of the offending member of the household...

23.   Paragraphs 13 and 14 of the procedures were adopted by respondent pursuant to a consent decree in the matter of Tyson & Randolph v. New York City Housing Authority, 74 C. 1856 (CMM), dated December 18, 1975.

24.   In April 1996, the Escalera decree was modified by order of the District Court to permit NYCHA to bypass the administrative procedures in cases involving "tenants who use or acquiesce in the use of their apartments for the trafficking of illegal narcotics." See, Escalera v. NYCHA, 924 F.Supp. 1323 (S.D.N.Y. 1996). In such cases, NYCHA has the option of commencing summary holdover proceedings in the NYC Housing Court pursuant to Sections 711(5) and 715 of the N.Y. Real Property Actions and Proceedings Law. In such cases, the holdover petition may be served as little as 5 days prior to the court hearing. N.Y. R.P.A.P.L. § 733. Indeed, landlords may commence proceedings by Orders to Show Cause that might be made returnable on even less notice. N.Y. R.P.A.P.L. § 733(2).

7

## STATEMENT OF FACTS

25.     Plaintiff ALISA MORRISON is the tenant of apartment 2C at 40-16 12th Street, Long Island City, New York, a public housing project known as the Queensbridge Houses, owned and administered by the New York City Housing Authority (NYCHA).

26.     Ms. Morrison has lived in her apartment for   years, and currently resides with her 14-year old daughter, Shylisa Morrison.

27.     Until the year 2000, Ms. Morrison was employed by the Parks Department.  In 2000, she lost her job and now makes $250 per month providing home child care through a program administered by the Administration for Children's Services.  She also receives Food Stamps and a shelter allowance from the Human Resources Administration.

28.     The City alleges that on two occasions in May 27 and June 9, 2009, an undercover officer purchased drugs from an unnamed individual present in Ms. Morrison's apartment.  The City has never alleged that Ms. Morrison was present at the time of those sales, and Ms. Morrison states that she had no knowledge of any such transactions.

29.     On June 11, 2009, the NYC Police Department entered Ms. Morrison's apartment pursuant to a search warrant, and arrested Ms. Morrison and her former girlfriend, Nicole Marshall.

30.     The police allegedly recovered two marijuana cigarettes from Ms. Marshall's pocket.  The police also recovered a "straw" that allegedly contained cocaine, although no proof of the identity of the straw's contents was ever produced by the police or NYCHA.

31.     No drugs were found anywhere else in the apartment.

32.     Ms. Morrison had no knowledge that the drugs were present in her apartment.

33.     Based on the events of June 11, 2009, Ms. Morrison pled guilty to a violation for Disorderly Conduct.  Ms. Marshall pled guilty to a violation for Unlawful Possession of Marijuana.

34.     In or about August 2009, NYCHA commenced Termination of Tenancy proceedings pursuant to the Escalera Consent Decree, charging Ms. Morrison with "nondesirability" based on the above mentioned events.

35.     On September 3, 2009, Ms. Morrison appeared at an administrative hearing before NYCHA Hearing Officer Arlene Ambert.

36.     On September 4, 2009, Hearing Officer Ambert issued a decision finding that Ms. Morrison was eligible for continued occupancy of her apartment subject to a one year probation, and permanent exclusion of Nicole Morrison from the apartment.

37.     In her decision, Ms. Ambert found Ms. Morrison to be credible in her testimony that she was unaware of the presence of drugs in her apartment, and that Ms. Marshall, although a frequent guest, did not reside at the premises.  Ms. Ambert noted that no evidence had been presented to support the allegations that cocaine had been found in the apartment.  Ms. Ambert concluded that "based on the credible evidence presented, termination at this time would be an extremely harsh disposition."

38.     In declining to terminate Ms. Morrison's tenancy, Ms. Ambert noted that if Ms. Morrison failed to comply with the terms of her probation, "she will be placing her tenancy at risk."

39.     After receiving the Hearing Officer's decision, Ms. Morrison believed that she could continue her residence in her apartment without fear of eviction, and focused her attention on searching for a job, and caring for her school-age daughter.

40.     Since the September 4 hearing, Ms. Morrison has complied with the terms of the Hearing Officer's determination. Ms. Marshall has not visited the subject apartment since June 11, and indeed, Ms. Morrison has had no contact with Ms. Marshall whatsoever.

41.     However, on September 23, 2009, Ms. Morrison's teenage daughter returned home from school to find bright orange stickers plastered to the apartment door, advising that the apartment had been closed by order of the NYC Police Department.

42.     Frantic and distraught, Morrison telephoned her mother who rushed home ...

43.     Upon arriving home, Ms. Morrison found on her door, in addition to the bright orange and yellow stickers, an order of the New York Supreme Court directing that she be enjoined from the "use and/or occupancy" of her apartment "for any purpose whatever." The Order further stated that the premises "shall be closed" and that the police were authorized to use force to "effectuate" the closing order.

44.     The police stickers further stated that removal of the stickers or the court order is punishable by a fine of up to $500 or by imprisonment of up to 90 days or both under N.Y.C. Administrative Code 7-711(e).

45.     Upon reading the court papers, Ms. Morrison learned that on the morning of September 23, 2009, the NYC Corporation Counsel had obtained from the Supreme Court, Queens County, an ex parte order directing the closure of her apartment. Although Corporation Council was well aware of Ms. Morrison's name, it named her in the caption only as "Jane Doe."

46.     In its application for a temporary closing order, Corporation Counsel did not apprise the judge of the decision of NYCHA's Hearing Officer that had been issued just two weeks earlier.

47.     In its application for a temporary closing order, Corporation Counsel did not apprise the judge that the residents of the subject apartment consisted of a single mother and her teenaged daughter – indeed, the application made no mention of the occupants at all.

48.     Corporation Counsel based its application for the ex parte order solely on the three incidents that allegedly occurred on May 27, June 9, and June 11, 2009.  The City did not allege that any specific illegal activity had occurred at the apartment between June 11 and the date of the City's application on September 23, 2009.

49.     However, the affirmation submitted to the court by Sean O'Toole, Esq., falsely, and without supporting details, stated that

> despite the numerous incidents at the subject premises, criminal activity has not ceased at the premises.  It is clear that a closing order is the only effective remedy to abate this serious public nuisance.

50.     Mr. O'Toole's affidavit further alleged, again without supporting facts, that the surrounding community "continued" to suffer from alleged illegal activity in Ms. Morrison's apartment, and that such supposed activity was interfering with the health and safety of those in the neighborhood.

51.     Mr. O'Toole further stated that

> drug enterprises such as that operating [sic] at the subject premises are often the scene of and/or cause of violent crimes, including shootings.  Therefore the Court should grant a temporary restraining order pending its determination on the motion for a preliminary injunction.

52.     There were, of course, no allegations of any violence, much less "shootings" at Ms. Morrison's apartment at any time.

53.     Annexed to the City's court papers was the affidavit of Police Officer Clifton Clarke, attesting to the incidents in May and June 2009.  Officer Clarke did not provide any information regarding the identity of the apartment's occupants or of the persons arrested. Officer Clarke included in his statement the conclusory and false allegation that the apartment "was inhabited solely by individuals responsible for and involved in the unlawful drug activity."

54.     The City did not include in its court papers any information regarding the disposition of the criminal proceedings brought against Ms. Morrison and Ms. Marshall.

55.     The City did not include in its court papers any evidence that cocaine was ever recovered at the premises.

56.     Like the affirmation in support of the closing order, the civil Complaint annexed to the City's application falsely alleged that "the illegal activities are ongoing at the subject premises. Thus it cannot be denied [sic] that the subject premises, constitutes a serious public nuisance, and as such should not be allowed to remain open even one more day."

57.     Since the City applied for its order ex parte, it was unfortunately true that the City's false allegation could not, in fact, be "denied" by Ms. Morrison at the time it was presented to the Supreme Court.

58.     Based on the misleading and incomplete information submitted by Corporation Counsel, the Hon. Orin Kitzes authorized the immediate sealing of Ms. Morrison's apartment and enjoined the use or occupancy of the apartment, pending a hearing to be held on September 25, 2009.

12

59.     After reading the court order posted on her door, and the police stickers advising her that entry was illegal, Ms. Morrison did not attempt to enter the apartment.  Instead, she and her daughter, without any of their belongings or a change of clothing, went to stay the night at Ms. Morrison's sisters' apartment at ...

60.     On September 24, 2009, Ms. Morrison contacted attorneys at Queens Legal Services.  Her attorneys immediately contacted Corporation Counsel and advised the City's attorneys of the true circumstances of the case, including the determination issued by the NYC Housing Authority.

61.     On the afternoon of September 24, the City agreed to rescind the closing order and permit Ms. Morrison and her daughter to return to their apartment.

62.     Upon information and belief, however, if Ms. Morrison had not been able to obtain counsel so quickly, she would have been locked out of her apartment at least one additional night, and might not have been restored to possession even after appearing in court on September 25, 2009.

63.     On September 25, 2009, the City's motion for a preliminary injunction was adjourned on consent to October 21, 2009.

## FIRST CAUSE OF ACTION

64.     The Defendant City sought to apply the Nuisance Abatement Law to obtain an ex parte order sealing a residential public housing apartment whose occupants were a mother and a minor child – an apartment in which no criminal activity had occurred for over 90 days prior to the City's application, and in which the Housing Authority had already taken steps to abate the alleged criminal activity, and had issued a determination permitting Plaintiffs' continued occupancy subject to continued NYCHA oversight.

65.     Under these circumstances, any benefit to the City or the public accruing from the immediate closure of the apartment without a pre-deprivation hearing was far outweighed by the risk of erroneous deprivation faced by Plaintiff.

66.     The NYC Nuisance Abatement Law therefore violates the Due Process Clause of the U.S. Constitution as applied in the circumstances of Ms. Morrison's case.

## SECOND CAUSE OF ACTION

67.     As a result of the City's violation of her Due Process rights, Plaintiff and her daughter suffered severe humiliation, anguish and emotional distress, and incurred monetary expenses, for which a remedy is provided under 42 U.S.C. § 1983.

14

(3) granting such other and further relief as the Co

**REQUEST FOR RELIEF**

WHEREFORE, plaintiffs request that this Court enter a final judgment pursuant to 28

U.S.C. §§ 1331, 1343(3) and 1337 of the Federal Rules of Civil Procedure:

(1) declaring that the NYC Nuisance Abatement Law violates the Due Process Clause of

the US Constitution as applied in the circumstances herein;

(2) granting Plaintiff damages in an amount to be determined at trial; and

(3) granting such other and further relief as the Court may deem just and proper.

Dated:      Jamaica, New York
            October 13, 2009

                        Yours truly,


                        JOHN C. GRAY, ESQ.
                        EDWARD JOSEPHSON, (EJJ 7815), of Counsel
                        HEEJUNG KOOK, ESQ., of Counsel
                        QUEENS LEGAL SERVICES, INC.
                        89-00 Sutphin Blvd.
                        Jamaica, New York 11435
                        (347) 592-2203
                        Attorneys for the Plaintiff

By: _____
                        EDWARD JOSEPHSON (EJJ 7815)

15